# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 14-22789-Civ-COOKE/TORRES

S.O.S. RESOURCE SERVICES, INC.,

      Plaintiff,

vs.

ROBERT DENNIS BOWERS, an individual,
DAVID DANIELS, an individual,
PATRICIA BATHHURST, an individual,
OMNI BENEFITS GROUP, INC.,
NATIONAL HEALTH PARTNERS, INC.,
LIFEFORCE TECHNOLOGIES, INC.

      Defendants.

_____/

## ORDER ON DEFENDANTS ROBERT DENNIS BOWERS, OMNI BENEFITS GROUP, INC., AND LIFEFORCE TECHNOLOGIES, INC.'S MOTION TO DISMISS COMPLAINT

Defendants Omni Benefits Group, Inc., LifeForce Technologies, Inc., and Robert Dennis Bowers move to dismiss Plaintiff's Complaint for lack of subject matter and personal jurisdiction as well as for improper venue. Defendants' Motion to Dismiss is fully briefed and ripe for adjudication. Having reviewed the Motion to Dismiss, the Responses and Replies thereto, the record, and the relevant legal authorities, Defendants' Motion to Dismiss is granted in part and denied in part.

### I. BACKGROUND

Plaintiff S.O.S. Resource Services, Inc. ("Plaintiff" or "S.O.S.") is a Florida Corporation with its principal place of business in Miami-Dade, Florida. Compl. ¶ 1. Defendant Robert Dennis Bowers ("Bowers") is a resident of Pennsylvania while Defendants Omni Benefits Group, Inc. ("Omni") and LifeForce Technologies, Inc. ("LifeForce") (collectively "Defendants") are Delaware Corporations with their principal places of business in Pennsylvania. *Id.* at ¶¶ 2, 5, 7.

Bowers founded National Health Partners, Inc. ("NHP"), was its former officer and director, and is currently one of its shareholders. *Id.* at ¶ 11. NHP offers and administers a

healthcare membership program known as CARExpress ("CX").[1] *Id.* at ¶¶ 10, 11. Bowers also founded Omni in March 2013 for the purpose of obtaining an exclusive worldwide marketing license for CX, with an option to purchase. *Id.* at ¶ 13. On March 20, 2013, Defendants Omni and NHP entered into a business agreement, which provided that Omni could obtain the exclusive worldwide license to market CX from NHP if it paid NHP $200,000.00 by a certain date. *Id.* at ¶ 18. Bowers negotiated and signed this agreement with NHP on behalf of Omni. *Id.* at ¶ 19. Bowers then traveled to Miami, Florida to meet with Plaintiff S.O.S. and negotiate a separate agreement as between Omni and S.O.S. *Id.* at ¶ 22. On August 23, 2013, Omni entered into a consulting agreement with S.O.S., which provided that S.O.S. would assist Omni in raising capital to purchase the exclusive worldwide marketing license for CX, and in return, would receive $15,000.00 and nine percent (9%) of Omni's total company shares. *Id.* at ¶¶ 20, 21. This agreement provided that any dispute between S.O.S. and Omni would be litigated in Miami-Dade County, Florida. *Id.* at ¶ 22.

S.O.S. alleges that to assist Omni in securing the funding that it needed to pay NHP for exclusive marketing rights to CX, it attempted to conduct due diligence on NHP, Omni and CX. *Id.* at ¶ 24. However, S.O.S. discovered that despite Bowers' representations that NHP had annual revenue of $2,000,000.00, NHP was in need of immediate capital to avoid bankruptcy and to reinstate its business operations, which had shut down as a result of the loss of its merchant processors. *Id.* at ¶¶ 24, 26. S.O.S. was able to secure financing for NHP in the amount of $120,000.00 through two separate loans. *Id.* at ¶ 26. Meanwhile, Bowers attempted to secure the services of merchant processors to ensure the success of CX, but filed applications for their services using the company name Lifeforce instead of Omni. *Id.* at ¶ 28. Bowers allegedly represented to the merchant processors that Lifeforce had acquired the right to market CX from NHP. *Id.* at ¶30. S.O.S. further alleges that funds from Lifeforce's sales of CX have directly benefited Bowers and NHP to S.O.S.'s detriment, and that Bowers entered into a separate agreement with NHP to sell CX products on behalf of Lifeforce to the detriment of S.O.S. and Omni. *Id.* at ¶¶ 32, 33. Therefore, Plaintiff S.O.S.

---

[1] CX is a healthcare membership program that offers its members access to a national healthcare savings network. Members present their membership cards to a nationwide network of participating healthcare providers for prearranged discounts on healthcare services. (ECF No. 1 at ¶ 12).

brings this action against Defendants alleging counts of unjust enrichment, fraud, tortious interference with a business relationship, and conspiracy.

## II. LEGAL STANDARD

Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2). "A court must dismiss an action against a defendant over which it has no personal jurisdiction." *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323-24 (M.D. Fla. 2011). In order to withstand a motion to dismiss, a plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendant. *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010). The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). If the defendant is able to refute personal jurisdiction by sustaining its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate its jurisdictional allegations through affidavits, testimony, or other evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). The district court must construe all reasonable inferences in the light most favorable to the plaintiff when dealing with conflicting evidence. *See PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010) ("If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists."); *see also Consol. Dev. Corp.*, 216 F.3d at 1291.

## III. ANALYSIS

Defendants Bowers, Omni, and LifeForce move for dismissal of this action on the grounds of lack of personal jurisdiction and improper venue.[2] In making their personal jurisdiction argument, Defendants argue two points: (1) Plaintiff completely fails to allege a statutory basis for Florida long-arm jurisdiction over Defendants, and alternatively (2)

---

[2] Defendants Bowers, Omni, and LifeForce Technologies, Inc. also challenged this court's subject-matter jurisdiction based on incomplete diversity. However, this argument is now moot as Defendant David Daniels (a Florida resident) was voluntarily dismissed from this action. (ECF No. 21). Additionally, Defendants also argue in their Reply that Plaintiff's action should be dismissed because Plaintiff failed to comply with mandatory mediation and arbitration provisions in the Consulting Agreement. However, I will not consider this argument because Defendants first raised this issue in their Reply, thereby failing to comply with Local Rule 7.1(C), which limits reply memoranda to rebuttal of matters raised in memoranda in opposition to a motion.

Plaintiff fails to allege with particularity facts that would bring Defendants' conduct under the ambit of Florida's long-arm jurisdiction.  Essentially, Defendants' second argument amounts to an attempt to dismiss specific counts in Plaintiff's Complaint for failure to state a claim upon which relief can be granted, which would then remove any jurisdictional hook Plaintiff has over Defendants. Defendants also argue that venue is improper because a substantial part of the events or omissions giving rise to S.O.S.'s claims occurred in Pennsylvania. (*Id.*).  I will address each of Defendants' arguments in turn.

**A. Personal Jurisdiction**

Defendants cite to *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499 (Fla. 1989), to support their argument that Plaintiff's claims should be dismissed for lack of personal jurisdiction because Plaintiff fails to allege "the language of the statute" under which it seeks to obtain jurisdiction over Defendants.  *Id.* at 502.  However, this case does not stand for the proposition that a failure to allege statutory language automatically results in a failure to adequately allege personal jurisdiction.  Here, Plaintiff has alleged facts to support its argument that this court has personal jurisdiction over Defendants under Florida's long-arm statute, and analyzing the manner in which Plaintiff has plead these claims will result in a determination regarding whether Plaintiff has plead facts adequate for this court to obtain personal jurisdiction over Defendants.

Plaintiff argues that this Court has both general and specific personal jurisdiction over Defendants under § 48.193(1)(a)(2) and § 48.193(2) of Florida's long-arm statute. Determining whether the long-arm statute provides a basis for jurisdiction over a nonresident defendant involves a two-prong analysis. I must first consider whether the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the long-arm statute. If so, I must next determine whether Defendants have sufficient minimum contacts with the forum state to satisfy constitutional due process requirements. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996); *Thomas v. Brown,* 504 F. App'x 845, 847 (11th Cir. 2013).

### 1. General Jurisdiction Under Florida Statute § 48.193(2)

Plaintiff first argues that general personal jurisdiction exists over Defendants because they "had continuous communications and contacts with not only the plaintiff, S.O.S., in Florida but also with David Daniels," an officer at NHP with an office in Florida. Pl.'s Resp. ¶ 15. Consequently, Plaintiff argues that general jurisdiction exists based on

Defendants' "continuous business relationship with NHP alone." *Id.*

Under Fla. Stat. § 48.193(2), a Florida court has jurisdiction over a "defendant who is engaged in substantial and not isolated activity within this state…whether or not the claim arises from that activity." "Florida courts have held the term 'substantial and not isolated activity' used in § 48.193(2) means 'continuous and systematic general business contact' with Florida." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006)(citing *Woods v. Nova Cos. Belize Ltd.*, 739 So.2d 617, 620 (Fla. 4th DCA 1999) and *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)). Generally, the contacts required to establish general jurisdiction are quite exacting and "must be especially pervasive and substantial to satisfy § 48.193(2)." *In re Farmland Indus., Inc.,* No. 3:05-CV-587-J-32MCR, 2007 WL 7694308, at *3 (M.D. Fla. Mar. 30, 2007). Accordingly, the exercise of general jurisdiction is only proper when Defendant's contacts with Florida are "so continuous and systematic as to render [the defendant] essentially at home in the forum state." *Daimler AG v. Bauman,* 134 S.Ct. 746, 754 (2014). Additionally, "a corporation's continuous activity of some sort within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Daimler AG,* 134 S.Ct. at 757 (quotations omitted).

Here, Plaintiff fails to present sufficient facts to demonstrate that the Defendants' contacts with Florida are so pervasive and substantial as to render them essentially at home in Florida and thus amenable to suit on any issue. Thus, general personal jurisdiction would not be proper under § 48.193(2) of Florida's long-arm statute.

### 2. Specific Jurisdiction under § 48.193(1)(a)(1)

Plaintiff argues that this Court has specific jurisdiction over Defendants under Fla. Stat. § 48.193(1)(a)(2) because Defendants committed "a tortious act within this state" when they directed false and misleading communications to Plaintiff in Florida. Pl.'s Resp. ¶ 19. When arguing in favor of a finding of specific personal jurisdiction over Defendants, Plaintiff relies on its allegations of fraud, tortious interference with a business relationship, and civil conspiracy against Defendants. In response, Defendants argue that Plaintiff fails to state a cause of action regarding the abovementioned claims and therefore this Court cannot exert personal jurisdiction over them in this case.

Section 48.193(1)(a)(2) of Florida's long–arm statute permits specific personal jurisdiction over a nonresident defendant who commits a tort outside of the state that causes

injury inside the state. *See Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1216 (11th Cir. 1999). "[T]o commit a tortious act in Florida, a defendant's physical presence is not required." *Wendt v. Horowitz,* 822 So.2d 1252, 1260 (Fla. 2002). "[T]elephonic, electronic, or written communications into Florida" provide a basis for jurisdiction if the tort arises from the communications and "depend[s] upon proof of either the existence or the content of any of the communications." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.,* 421 F.3d 1162, 1168 (11th Cir. 2005) (quotations omitted). In Florida, fraud is an intentional tort. *Windstar Club, Inc. v. WS Realty, Inc.,* 886 So.2d 986, 987 (Fla. 2nd DCA 2004).

### a. Tortious Interference

In order to state a claim for tortious interference of business relations under Florida law, a plaintiff must establish: "(1) the existence of a business relationship under which the plaintiff has legal rights; (2) an intentional and unjustified interference with the relationship; and (3) damage to the plaintiff as a result of the tortious interference with that relationship." *Coach Servs., Inc. v. 777 Lucky Accessories, Inc.*, 752 F. Supp. 2d 1271, 1273 (S.D. Fla. 2010) (citing *Ad–Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.,* 849 F.2d 1336, 1348–49 (11th Cir. 1987)). Moreover, "a claim for tortious interference cannot lie where the alleged interference is directed at a business relationship to which the defendant is a party. In other words, the interfering defendant must be a third party, a stranger to the business relationship." *Romika-USA, Inc. v. HSBC Bank USA, N.A.,* 514 F. Supp. 2d 1334, 1338 (S.D. Fla. 2007) (citing *Ernie Haire Ford, Inc. v. Ford Motor Co.,* 260 F.3d 1285, 1294 (11th Cir. 2001)).

In its response to Defendants' Motion to Dismiss, Plaintiff fails to address Defendants arguments for dismissing Count III.[3] Defendants argue that Count III should be dismissed because Bowers is not a third party to the agreement between Plaintiff and Omni since he is an officer of Omni and the person who actually negotiated the Consulting Agreement. I agree with Defendants. Bowers was certainly not a disinterested third party to the Consulting Agreement between Plaintiff and Omni. Instead, Bowers negotiated with Plaintiff and engaged it to "assist Omni in its attempts to raise capital," and thus was the "source" of the relationship he is accused of interfering with. Accordingly, Count III of Plaintiff's Complaint fails to state a claim and is therefore dismissed.

---

[3] Plaintiff S.O.S. concedes that Defendant Bowers is an Officer and Director of Defendant Omni in its response to Defendants' Motion to Dismiss.

### b. *Fraud*

Defendants next argue that Plaintiff's "complaint fails to allege with particularity what, if any, fraudulent conduct was committed by Bowers or Omni in Florida." Defs.' Mot. Dismiss 5. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001) (citing *Durham v. Bus. Management Assocs.,* 847 F.2d 1505, 1511 (11th Cir.1988)). The application of Rule 9(b), however, "must not abrogate the concept of notice pleading." *Id.*

In order for a claim of fraud to withstand a motion to dismiss, a complaint must set forth: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba,* 256 F.3d at 1202 (citing *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1371 (11th Cir.1997)).

In the instant matter, the Complaint sufficiently alleges the statements and/or omissions made by Defendants and the content of such statements in paragraphs 23 and 25. The Complaint likewise provides the time and place of such statements, and the persons responsible for making the same in paragraphs 22 and 23. Moreover, Plaintiff provided the affidavit of John Thomas, Esq. as further support that such statements and/or omissions were made by the Defendants in Florida in May 2013. Lastly, the Complaint sufficiently alleges that Plaintiff relied on these statements in connection with entering into the Consulting Agreement with Defendants, and that said statements and/or omissions made by Defendants directly benefitted Defendants to the detriment of Plaintiff. Compl. ¶¶ 32, 33. Accordingly, Plaintiff's Complaint states with particularity the circumstances constituting fraud or mistake, and Defendants' motion to dismiss Count II is denied.

Therefore, with Plaintiff's fraud claim in tact, Plaintiff has alleged sufficient jurisdictional facts to bring this action within the ambit of Florida's long-arm statute. Plaintiff has sufficiently plead a cause of action for fraud against Defendants, which

consequently forms the basis for personal jurisdiction under § 48.193(1)(a)(2).[4]

However, "[e]ven where there is facial jurisdiction under the Florida long arm statute, the party over which jurisdiction is asserted must have had sufficient minimum contacts with Florida to satisfy due process requirements." *Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 644 (Fla. Dist. Ct. App. 2013), reh'g denied (Nov. 12, 2013) (citing *Lakewood Pipe of Texas, Inc. v. Rubaii,* 379 So.2d 475, 477 (Fla. 2d DCA 1979)). Accordingly, I will now discuss whether Defendants have sufficient minimum contacts with Florida to satisfy Constitutional due process requirements.

### 3. Due Process

"The Due Process Clause of the United States Constitution protects an individual's liberty interest" and "requires that the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign." *Brennan v. Roman Catholic Diocese of Syracuse NY, Inc.,* 322 Fed. Appx. 852, 855 (11th Cir. 2009). "This 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* at 855-56. Thus, a minimum contacts inquiry in intentional tort cases "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984)) (quotations omitted). "And it is the defendant, not the plaintiff or third parties, who must create contacts with the forum state." *Id.* at 1126.

Defendants argue that they do not have the requisite minimum contacts with Florida that are necessary to comport with due process. Specifically, Defendants contend that Florida jurisdiction is improper because Plaintiff has not demonstrated that Defendants:

> [C]arried on economic activities in Florida—no sales, no contracts, no services are performed by Defendants in Florida. Defendants, and each of them, avail themselves of none of the privileges and benefits of Florida law. They solicit no business in Florida either through salespersons or through advertising reasonably calculated to reach Florida. *Id.* (internal citations omitted).

However, these types of contacts are inapplicable in this case. Defendants enumerate

---

[4] I will not address the merits of Count IV (Civil Conspiracy) as I have already determined that Plaintiff's fraud claim is sufficient to anchor specific personal jurisdiction over Defendants, and Defendants did not technically move for dismissal of the claim under Fed. R. Civ. P. 12(b)(6).

contacts that normally establish Florida long-arm jurisdiction over nonresident defendants who operate, conduct, engage in, or carry on business in Florida. *See* Fla. Stat. § 48.193(1)(a)(1). Plaintiff has not alleged that specific jurisdiction exists under this subsection of the long-arm statute. Instead, as discussed above, Plaintiff has established specific jurisdiction under § 48.193(1)(a)(2) concerning Defendants alleged tortious activity in Florida.

Plaintiff asserts that: (1) Bowers traveled to Florida and met with Plaintiff to negotiate the terms of the Consulting Agreement; (2) Omni and Bowers made certain false and misleading representations to induce Plaintiff to enter into the Consulting agreement; and (3) Omni and Bowers directed numerous communications relating to the Consulting Agreement by phone and through electronic correspondence to Plaintiff in Florida. Essentially, Plaintiff alleges that Defendants directed false and misleading communications to Plaintiff in Florida. Under the "effects" test established in *Calder v. Jones*, 465 U.S. 783, 789–90 (1984), even a single act can support jurisdiction if the conduct was purposeful and created a "substantial connection" with the forum. *Burger King Corp.*, 471 U.S. at 475. Therefore, "due process is satisfied when the plaintiff brings suit in the forum where the "effects" or "brunt of the harm" caused by the defendant's intentional tortious activity was suffered." *Brennan,* 322 Fed.Appx. at 856. Consequently, "intentional torts are such acts … [that] may support the exercise of personal jurisdiction over the non-resident defendant who has no other contacts with the forum." *Id.*

Thus, this Court maintains personal jurisdiction over Defendants because this matter revolves around Defendants' alleged intentional tortious activity directed at Plaintiff in Florida. Plaintiff has sufficiently alleged that Defendants directed false and misleading communications to Plaintiff in Florida to induce Plaintiff to enter into business negotiations with Defendants, and that it was harmed as a result of these activities. Plaintiff suffered the "brunt of the harm" in Florida because this litigation results from alleged injuries that 'arise out of or relate to' Defendants' activities that were directed at this State

## B. Venue

On a motion to dismiss based on improper venue, the plaintiff has the burden of showing that venue in the forum is proper. *See, e.g.*, *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003); *Indymac Mortgage Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 237 (D. Conn. 2001) (citing *U.S. Envtl. Prot.*

*Agency v. Port Auth. of New York & New Jersey*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001)); *McCracken v. Automobile Club of Southern California, Inc.*, 891 F. Supp. 559, 560 (D. Kan. 1995). The court must accept all allegations of the complaint as true, unless contradicted by the defendants' affidavits, and when an allegation is so challenged the court may examine facts outside of the complaint to determine whether venue is proper. *See, e.g.*, *Indymac*, 167 F. Supp. 2d at 237 (citations omitted); *Vanguard*, 262 F. Supp. 2d at 913; *McCracken*, 891 F. Supp. at 561; *see also Hodgdon Powder Co., Inc. v. Clean Shot Technologies, Inc.*, 92 F. Supp. 2d 1170, 1171–72 (D. Kan. 2000) (noting that the standard for deciding a motion to dismiss for improper venue is generally the same as that for deciding a motion to dismiss for lack of personal jurisdiction). The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. *See id.*; *see also Murphy v. Schneider National, Inc.*, 349 F.3d 1224, 1229–30 (9th Cir. 2003).

Plaintiff has established that this Court has personal jurisdiction over Defendants. Defendants admits in their briefing that venue is proper in "any judicial district in which the defendant is subject to the court's personal jurisdiction with respect to such action." Defs.' Mot. Dismiss 8. Therefore, Defendants' motion to dismiss based on improper venue is denied.[5]

## IV. CONCLUSION

For the reasons provided herein, Defendants', Robert Dennis Bowers, Omni Benefit Group, Inc., and Lifeforce Technologies, Inc., Motion to Dismiss Action and Memorandum of Law in Support (ECF No. 18) is **GRANTED** *in part* **and DENIED** *in part* as follows:

1. Count III (Tortious Interference with a Business Relationship) of Plaintiff's Complaint is **DISMISSED**.

2. Defendants Motion to Dismiss remaining counts for lack of personal jurisdiction and improper venue is **DENIED**.

**DONE and ORDERED** in chambers at Miami, Florida, this 21st day of May 2015.

---

[5] Plaintiff also cites to a forum selection clause in its Consulting Agreement with Omni in support of its argument that venue is proper in the Southern District of Florida. Defendants counter that since Plaintiff's claims are grounded in tort, it cannot use this contractual provision against Defendants. Additionally, Defendants argue that this forum selection clause should not be enforced against entities not a party to the contract, which was formed between Plaintiff and Omni only. I will not address this argument as venue has already been determined to be proper due to this Court's personal jurisdiction over Defendants.

_Marcia G. Cooke_

MARCIA G. COOKE
United States District Judge

Copies furnished to:
_Edwin G. Torres, U.S. Magistrate Judge_
_Counsel of Record_